UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

| | | |
|---|---|---|
| BURNS CONTRACTING, INC. et al., | Case No. | 1:15-cv-1045 |
| IRON CROSS, LLC et al., | | 1:15-cv-1046 |
| BROWNSTONE PROPERTIES, L.L.C. et al., | | 1:15-cv-1047 |
| MICKENS GROUP et al., | | 1:15-cv-1048 |
| PREMIUM PROPERTIES UNLIMITED, LLC et al., | | 1:15-cv-1049 |
| PRECIOUS CREATION, INC. et al., | | 1:15-cv-1050 |
| JESSE STRICKLAND et al., | | 1:15-cv-1051 |
| REFLECTIONS, LLC et al., | | 1:15-cv-1052 |
| J. TAYLOR ELECTRIC, INC. et al., | | 1:15-cv-1106 |
| JEFF A. MOYER, | | 1:15-cv-1107 |

    Plaintiffs,

                               HON. ROBERT HOLMES BELL

MERCANTILE BANK MORTGAGE
COMPANY, LLC et al.

    Defendants.
_____/

## **OPINION**

There are 10 cognate cases pending before this Court, and each Plaintiff filed a complaint alleging discriminatory lending practices in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691e. The matter is before the Court on Defendants' motion to dismiss Plaintiffs' third-amended complaint for failure to state a claim.

## I.

The Community Reinvestment Act ("CRA"), 12 U.S.C. § 2901, is a federal statute that encourages banks to provide services and make loans to residents in all segments of the population, with an emphasis on lending to low-income neighbors. In response to the CRA, Mercantile Bank adopted a community reinvestment strategy, and created a CRA committee. As a result of deliberate efforts through the CRA committee, the bank provided business loans to each Plaintiff.

Pat Julien, a loan officer at Mercantile Bank, approved Plaintiffs' loans and managed each relationship. In 2006, Ms. Julien stopped working at Mercantile Bank. After Ms. Julien left, Plaintiffs allege that Defendants began to treat them differently. From 2007 through 2009, Defendants made adverse lending actions, called loans, and foreclosed on collateral for late payments and tax liens. Plaintiff alleges that these reasons were mere pretext, and that Defendants were engaging in discriminatory lending practices. Plaintiff asserts that Defendants tightened their policies to eliminate black business borrowers. Plaintiffs refer to emails sent among Mercantile Bank employees as displaying discriminatory intent and racial animus.

Each of the 10 cognate cases allege violations of the ECOA. Defendants argue that Plaintiffs' claims are barred by the statute of limitations. Defendants also argue that Plaintiffs have failed to plead the necessary elements of a plausible discrimination claim.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a party may assert "failure to state a claim upon which relief can be granted" as an affirmative defense. "[T]o survive a motion to dismiss [under 12(b)(6)], the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal quotation marks omitted). In reviewing such a motion, the Court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs & Assoc., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990). As a general rule, however, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent*, 583 F.3d at 903.

Although a complaint does not need detailed factual allegations, a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

### III.

**A. Statute of Limitations Defense**

Claims arising under the ECOA and its regulations are subject to a two-year statute of limitations if the claim accrued before July 21, 2010. *Haug v. PNC Fin. Servs. Grp., Inc.*, 930 F. Supp. 2d 871, 878 (N.D. Ohio 2013) ("Although PNC cites to the five-year limitations period as governing the matter, that period did not take effect until July, 2010, and the two-year limitations period applied prior to claims accruing prior to that date."). Absent an express statement by Congress that an expansion of the limitations period should apply retroactively, courts following the Supreme Court's holding in *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994), have uniformly concluded that "newly enacted legislation that lengthens a statute of limitations does not apply retroactively to revive a claim that had expired under the prior limitations period." *Id.* (citing *In re ADC Telecomms., Inc. Secs. Litig.*, 409 F.3d 974, 977 (8th Cir. 2005); *Enter. Mortgage Acceptance Co., LLC, Secs. Litig. v. Enter. Mortgage Acceptance Co.*, 391 F.3d 401, 409-10 (2d Cir. 2004); *Chenault v. U.S. Postal Serv.*, 37 F.3d 535, 539 (9th Cir. 1994)). Further, the ECOA's "focus is upon the time of discriminatory actions, not at the time at which the consequences of the action became painful." *Mays v. Buckeye Elec. Co-op Inc.*, 277 F.3d 873, 879 (6th Cir. 2002). Thus, any ECOA claim accruing before July 21, 2010 is subject to the two-year limitations period that was in effect under 15 U.S.C. § 1691e(f).

Defendants filed a motion to dismiss, arguing that Plaintiffs' claim accrued in 2008, and the suit is barred by the two-year statute of limitations. To determine the accrual date,

the Court will look to the specific ECOA and regulatory violations that Plaintiffs allege caused their injuries. *See Mays*, 277 F.3d at 879-80. Plaintiffs allege claims of intentional racial discrimination and disparate impact discrimination. Plaintiffs' expert analyzed statistical data showing that Defendants treated similarly-situated white and black business owners differently between 2008 and 2011. (ECF No. 35, PageID.556-58.) Plaintiffs allege that, in 2006, Defendants decided "not to lend any more money to black people." (*Id.* at PageID.553.) Plaintiffs also allege adverse actions taken by Defendants in 2007 and 2008, after loan officer Pat Julien left Mercantile Bank.

Defendants argue that, based on the third-amended complaint, Plaintiffs' claim accrued no later than 2008. Plaintiffs argue that the claims accrued by December 31, 2011, at the earliest, but more likely accrued in 2012, when Defendants' intentional plan to shrink commercial lending came to light. (ECF No. 35, PageID.618.) Based on the facts in the complaint, the alleged violations took place from 2007 through 2009.

The ECOA provides that an adverse action means "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). Plaintiffs allege that Defendants took adverse action by revoking Plaintiffs' credit and foreclosing on Plaintiffs' collateral from 2007 through 2009.

Plaintiffs argue that the accrual date began when Plaintiffs discovered Defendants' plan to shrink commercial lending. Plaintiffs rely on *Jones v. Citibank, Fed. Sav. Bank*, 844 F. Supp. 437, 440 (N.D. Ill. 1994), to assert that courts have applied the notion of discovery

as tolling the statute of limitations, regardless of whether the ECOA expressly mentions such a rule. *Id.* ("[T]he operative date is not the date on which the wrong that injuries the plaintiff occurs, but the date . . . on which the plaintiff discovers that he has been injured."). But the court in *Jones* was not interpreting the accrual date for the ECOA. *Id.* ("The parties do not seriously dispute that a two-year statute of limitations applies to each claim. By their express terms, the [ECOA] . . . [is] governed by two-year statutes of limitation."). Instead, the court was interpreting 42 U.S.C. §§ 1981 and 1982 because those statutes did not provide an explicit statute of limitations. *Id.* Therefore, Plaintiffs' reliance on *Jones* is misguided.

The Court must determine whether the discovery doctrine applies. Defendants argue that the ECOA does not explicitly mention a discovery rule. Further, the statute effective at that time of the alleged violations barred actions that were filed more than 2 years "after the date of the occurrence of the violation." 15 U.S.C. § 1691e(f). Defendants rely upon the Sixth Circuit's conclusion in *Mays*, "[t]he statute's focus is upon the time of discriminatory actions, not at the time at which the consequences of the action become painful." *Mays*, 277 F.3d at 879. Defendants argue that, unlike other federal statutes, the ECOA does not mention a discovery rule; instead, the language specifically provides that the action accrues when the violation occurs.

Further, district courts have also concluded that *Mays* precludes the application of a discovery rule for ECOA claims. *See, e.g., Claybrooks v. Primus Auto. Fin. Servs., Inc.*, 363 F. Supp. 2d 969, 977 (M.D. Tenn. 2005) ("[T]he court declines to [imply a general discovery rule as part of the ECOA]."); *Beard v. Dominion Homes Fin. Servs., Inc.*, No. 2:06-cv-00137,

2007 WL 2137944, at *2 (S.D. Ohio July 23, 2007) ("[T]he federal discovery rule, which provides that the statute of limitations does not begin to run until the Plaintiff knew or should have known of the injury, does not apply to ECOA claims.") (citing *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001)). In *Claybrooks*, the court looked at congressional intent and the ECOA's language to opine that both precluded the application of a general discovery rule. *Id.* at 976. "The statute states that the limitations period should be measured from the date of occurrence of the violation." *Id.* And the legislative history "suggests that Congress already considered the difficulty of discovering ECOA violations when, in 1976, it extended the limitations period from one to two years and added the explicit exception." *Id.* (citing *Farrell v. Bank of New Hampshire-Portsmouth*, 929 F.2d 871, 874 (1st Cir. 1991)). The ECOA gives a plaintiff an additional year to file suit whenever an agency having responsibility for administrative enforcement or the Attorney General commence an action within 5 years after the date of the violation. 15 U.S.C. § 1691e(f). By extending the statute of limitations and allowing for an exception under § 1691e(f), Congress intended to modify the law to make allowances for the difficulty of discovering ECOA violations. Moreover, in 2010, Congress further modified the ECOA to extend the statute of limitations period from 2 to 5 years, and again, did not include a discovery-rule provision. Therefore, the Court agrees that application of the discovery rule here would thwart congressional intent.

In addition, Plaintiffs argue that *American Pipeline*, 414 U.S. 538, 559 (1974), tolls the statute of limitations in a class-action lawsuit for class members who seek to intervene or file separate lawsuits after class certification is denied. This argument fails because even

if the statute of limitations tolls, Plaintiffs brought their class-action suit on December 20, 2013, more than two years after the violations occurred.

Plaintiffs also argue that, because Defendants engaged in fraudulent concealment, the ECOA's two-year statute of limitations does not bar the case. Equitable tolling is warranted "when a defendant fraudulently conceals its actions, misleading a plaintiff respecting the plaintiff's cause of action." *Claybrooks*, 363 F. Supp. 2d at 977 (quoting *Hill v. U.S. Dep't of Labor*, 65 F.3d 1331, 1335 (6th Cir. 1995)). To avoid the statute of limitations bar, a plaintiff must prove: "(1) the defendant's wrongful concealment of his actions; (2) the plaintiff[']s resulting failure to discover the operative facts that are the basis of his cause of action within the appropriate limitations period; and (3) plaintiff's due diligence until discovery of the operative facts." *Beard*, 2007 WL 2137944, at *2 (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975)).

Equitable tolling should be narrowly applied, and plaintiffs are held to stringent pleading rules. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1465 (6th Cir. 1988) ("[B]ecause statutes of limitation are vital to the welfare of society and are favored in the law, the plaintiff who invokes the doctrine of fraudulent concealment will be held to stringent rules of pleading and evidence, and especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by ordinary diligence, the discovery might not have been before made.") (internal quotations omitted).

Moreover, deception of motive supports "equitable tolling only where the deception conceals the very fact of discrimination." *Hill*, 65 F.3d at 1337 (citing *Gomez v. Great Lakes Steel Div., Nat'l Steel Corp.*, 803 F.2d 250, 255 (6th Cir. 1986)). Equitable tolling is not warranted where a plaintiff "is aware of all of the essential facts constituting discriminatory treatment but lacks direct knowledge or evidence of a defendant's subjective discriminatory motive." *Id.* (citing *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1216 (5th Cir. 1992), *cert. denied*, 506 U.S. 820 (1992)). The critical question is not whether concealment of motives alone constitutes fraudulent concealment, but whether a defendant's alleged fraudulent conduct concealed the facts respecting the accrual or merits of plaintiff's claim. *Id.* (citing *Robinson v. Cent. Brass Mfg. Co.*, 987 F.2d 1235, 1244 (6th Cir. 1993), *cert. denied*, 510 U.S. 827 (1993)).

To show fraudulent concealment, each element "must be pleaded with particularity." *Id.*; Fed. R. Civ. P. 9(b). Federal Rule of Civil Procedure 9(b)'s particularity requirement "does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony." *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 679 (6th Cir. 1988). Rule 9(b) excuses a party from pleading discriminatory intent under the elevated pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). But it does not give a plaintiff "license to evade the less rigid–though still operative–strictures of Rule 8." *Id.* The Federal Rules "do not require courts to credit a complaint's conclusory statements without reference to its factual context" on a motion to dismiss. *Id.*

To show wrongful concealment of discriminatory intent, Plaintiffs allege that "Mercantile has shielded, and continues to shield from public disclosure, e-mails which evidence that, as early as 2006, it began to back away from involvement with black borrowers (and even black board members) and considered the black community and 'loans to black people' to be in a separate category." (ECF No. 35, PageID.618, ¶ 582.) Plaintiffs assert that, "[o]n March 18, 2015, Mercantile also produced a 2006 email in which Mercantile CEO Michael Price tells one of his fellow executives that 'Chief got wind of the executive session stuff' and wants to 'nip . . . in the bud' the discussion that 'we should lend more $ to black people.'" (*Id.* at ¶ 583.) Plaintiffs further allege that "Mercantile also admits that it was actively avoiding the topic of 'how many loans to black people' in 2009." (*Id.* at PageID.619, ¶ 584.) In an email in 2009, Plaintiffs allege that Robert Kaminski wrote an email to the CEO, to "'give a broad banking industry status update' to a minority business group in order to avoid the 'how many loans to black people discussion.'" (*Id.* at ¶ 585.)

Defendants claim that they took adverse lending actions, called loans, and foreclosed on collateral for non-discriminatory reasons, including late payments and the existence of tax liens. (*Id.* at PageID.559, ¶ 76.) But Plaintiffs argue that Defendants "tolerated and took late payments from the Cognate Plaintiffs for years before asserting this as a basis to call a loan, accelerate on a debt, or initiate foreclosure." (*Id.* at ¶ 78.) In fact, "many of the alleged bases for Mercantile's adverse lending actions occurred after the date when the Bank decided to exit the respective loan relationship." (*Id.* at ¶ 79.)

Defendants rely on *Hill* to argue that fraudulent concealment is not warranted because Plaintiffs were aware of all the essential facts constituting discriminatory treatment, and only lacked direct knowledge or evidence of Defendants' alleged discriminatory motive. *Hill*, 65 F.3d at 1337. In *Hill*, the Sixth Circuit examined precedent from other circuits, and concluded that concealment of motive alone is insufficient to extend a limitations period. *Id.* (citing *Olson v. Mobil Oil Corp.*, 904 F. 2d 198, 203 (4th Cir. 1990) and *Merrill v. Southern Methodist Univ.*, 806 F.2d 600, 605 (5th Cir. 1986)).

The complaint cites Defendants' active concealment of evidence to suggest subjective discriminatory motive. But the complaint does not allege Plaintiffs' lack of awareness of essential facts to constitute discriminatory treatment. In fact, Plaintiffs allege that, in June of 2006, several of them voiced concerns that "the Bank's black clients were being treated differently[.]" (ECF No. 35, PageID.555, ¶ 52.) Plaintiffs have not pleaded the first element of fraudulent concealment with particularity. If this Court accepted Plaintiffs' argument, it would essentially eliminate the statute-of-limitations provision because nearly all plaintiffs raising ECOA violations allege concealment of discriminatory motive. Here, fraudulent concealment does not apply to bar the effect of the statute of limitations. Because the limitations period has run, Plaintiffs have failed to state a plausible claim for relief.

**B. Discrimination claim plausibility**

Defendants also argue that Plaintiffs failed to plead a plausible discrimination claim. Because the Court finds that the statute of limitations bars the claim, it will not address

whether Plaintiff sufficiently pleaded intentional discrimination and disparate impact discrimination claims.

    An order and judgment will enter in accordance with this Opinion.


Dated: <u>October 27, 2016</u>                <u>/s/ Robert Holmes Bell</u>
                                                         ROBERT HOLMES BELL
                                                         UNITED STATES DISTRICT JUDGE